## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| JESSICA "JESSE" GOLDEN, and RACHEL MORTENSON,<br><br>Plaintiffs,<br><br>- against -<br><br>CHARLESTON SILVER SLIPPER, LLC d/b/a SILVER SLIPPER GENTLEMEN'S CLUB,<br><br>Defendant. | Case No.  2:22-cv-2538-BHH |

Plaintiffs Jessica "Jesse" Golden and Rachel Mortenson (collectively, "Plaintiffs"), file this Complaint against Charleston Silver Slipper, LLC d/b/a Silver Slipper Gentlemen's Club ("Defendant") respectfully allege as follows:

### BACKGROUND

1.    This is an action for damages and injunctive relief relating to Defendant's misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their strip club, Silver Slipper Gentlemen's Club located in Charleston, South Carolina ("Silver Slipper" or the "Club").

2.    As detailed below, Defendant's misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) violation of section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1), which prohibits both false or misleading representations of fact in commercial advertising and the false or misleading use of a person's image for commercial purposes; b) violation of each Plaintiff's common law right of publicity relating to Defendant's misappropriation of each Plaintiffs' image and likeness; c) violation of South Carolina's Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10, *et seq.*; d) defamation;

and e) various common law torts, including conversion.

3.      In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendant from using any of their Images in any way and through any medium.

## JURISDICTION & VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 28 U.S.C. § 1125(a)(1).

5.      This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6.      Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7.      According to publicly available records, defendant Charleston Silver Slipper, LLC is a corporation formed under the laws of the state of South Carolina, with its principal place of business located at 2015 Pittsburgh Ave, Charleston, South Carolina 29405. Charleston Silver Slipper, LLC operates Silver Slipper Gentlemen's Club which is located at 2015 Pittsburgh Ave, Charleston, South Carolina 29405 ("Silver Slipper").

8.      Venue is proper in the United States District Court District of South Carolina because Defendants' principal place of business is located in Charleston, South Carolina.

9.      A significant portion of the alleged causes of action arose and accrued in Charleston, South Carolina and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Charleston, South Carolina.

- 2 -

## PARTIES

*Plaintiffs*

10.    Plaintiff Jessica Golden "Jesse" Golden ("Golden") is a well-known professional model, and a resident of Los Angeles County, California.

11.    Plaintiff Rachel Mortenson ("Mortenson") is a well-known professional model, and a resident of Los Angeles County, California.

*Defendant*

12.    Defendant is a Domestic limited liability company formed under the laws of the state of South Carolina and registered to conduct business in South Carolina. At all times relevant to this action, Charleston Silver Slipper, LLC operated Silver Slipper in Charleston, South Carolina.

13.    Service of process may be perfected upon Defendant Charleston Silver Slipper, LLC by serving the registered agent for service of process, Betty Dunn, who can be located at 2015 Pittsburg Ave, Charleston, South Carolina, 29405.

## FACTUAL ALLEGATIONS

14.    Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

15.    Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

16.    Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by Defendant to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendant.

17.    In the case of each Plaintiff, this apparent claim was false.

18.    Moreover, this misappropriation occurred without any Plaintiff's knowledge, consent, or authorization.

19.    No Plaintiff has ever received any remuneration for Defendant's improper and illegal use of their Images, and Defendant's improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

20.    Further, in certain cases Defendant misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

***Plaintiffs' Individual Backgrounds and Careers***

21.    Golden is a successful model and businesswoman. She became a supermodel with high profile clients that included Abercrombie & Fitch, Victoria Secret, Lucy Sport, Coca-Cola, GAP, and Nike. She has graced the covers of magazines like New York Times, Fitness, New Port Beach, Yoga International, and many others. Jesse shares her secrets on her own blog and also writes for many other magazines and sites. She's currently a Holistic Health Practitioner and is a certified Hatha yoga teacher. She has her own fitness and yoga brand and products. Working for many notable fashion brands, dozens of commercials, television and film; Jesse continues to expand her career through life experiences.

22.    That we know of, Golden is depicted in the photo in Exhibit "A" to promote Silver

Slipper on its Facebook page. This Image was intentionally altered to make it appear that Golden was either a stripper working at Silver Slipper, that she endorsed Silver Slipper, or that she was otherwise associated or affiliated with Silver Slipper.

23.    Golden has never been employed at Silver Slipper, has never been hired to endorse Silver Slipper, has never been otherwise associated or affiliated with Silver Slipper, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

24.    Mortenson signed with a modeling agency since 2009. She signed with Ford models, La Models, Next Models Miami, and an agency in New York. Mortenson is the face of hundreds of campaigns from beauty brands, fashion houses, and swim and lingerie brands. In addition, Mortenson is currently the face of Guess Jeans and has been for nine years running. Mortenson as the face of Fredrick's of Hollywood for over four years. She was also on two covers of Playboy Magazine in the same year. In addition, Mortenson was featured in magazines such as Vogue, Vanity Fair, Rolling Stones, GQ, and Sports Illustrated. Mortenson has walked and opened for runways shows such as Yeezy, Michael Costello, Guess Jeans, Max Mara, Beach Bunny, Escada, and Marciano.

25.    That we know of, Mortenson is depicted in the photo in Exhibit "B" to promote Silver Slipper on its Instagram and Facebook pages. This Image was intentionally altered to make it appear that Mortenson was either a stripper working at Silver Slipper, that she endorsed Silver Slipper, or that she was otherwise associated or affiliated with Silver Slipper.

26.    Mortenson has never been employed at Silver Slipper, has never been hired to endorse Silver Slipper, has never been otherwise associated or affiliated with Silver Slipper, has received no remuneration for Defendant's unauthorized use of her Images, and has suffered, and

will continue to suffer, damages as a result of same.

***Defendant's Business Activities and Misappropriation***

27.    Defendant operates (or operated, during the relevant time period,) Silver Slipper, where they are (or were) engaged in the business of selling alcohol and food in an atmosphere where nude or semi-nude women entertain the business' clientele.

28.    In furtherance of its promotion their promotion of Silver Slipper, Defendant owns, operates, and control Silver Slipper's social media accounts, including its Facebook, Twitter, and Instagram accounts.

29.    Defendant used Silver Slipper's Facebook, Twitter, and Instagram accounts to promote Silver Slipper, and to attract patrons.

30.    Defendant did this for their own commercial and financial benefit.

31.    Defendant have used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at Silver Slipper, endorsed Silver Slipper, or was otherwise associated or affiliated with Silver Slipper.

32.    Defendant used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed Silver Slipper to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

33.    Defendants were well aware that none of the Plaintiffs have ever been affiliated with or employed by Silver Slipper, and at no point have any of the Plaintiffs ever endorsed Silver Slipper or otherwise been affiliated or associated with Silver Slipper.

34.     All of Defendant's activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs.

35.     Defendant have never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

36.     Plaintiffs have never received any benefit from Defendant's unauthorized use of their Images.

***Standard Business Practices in the Modeling Industry***

37.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

38.     The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

39.     Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

***Defendant's Misappropriation of Plaintiffs' Images***

40.     Defendant was aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed Silver Slipper.

41.     Unauthorized use of Plaintiffs' Images deprives them of income they are owed

relating to the commercialization of their Images.

42.    In addition, Plaintiffs allege that any the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with Silver Slipper..

43.    At no point was any Plaintiff ever contacted by any Defendant, or any representative of any Defendant, to request the use of any of Plaintiffs' Images.

44.    No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

45.    No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Silver Slipper website, Twitter, Facebook, or Instagram accounts.

46.    Defendant used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

**FIRST CAUSE OF ACTION**
**(Violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B): False Advertising)**

47.    The advertisements at issue in this action were false and misleading under 15 U.S.C. § 1125(a)(1)(B) because no Plaintiff ever worked at or was in any way associated or affiliated with Silver Slipper, nor had they agreed to appear in Silver Slipper' advertisements.

48.    Given the false and misleading nature of the advertisements, they had the capacity to and did deceive consumers.

49.    Upon information and belief, the deceptive advertisements had a material effect on the purchasing decisions of consumers who attended Silver Slipper.

50.    Defendant's publication of these false and misleading advertisements on the internet had the capacity to and did affect interstate commerce.

51.    Even though Defendant was always aware that the Plaintiffs neither worked at nor

endorsed Silver Slipper, Defendant nevertheless used Plaintiffs Images to mislead potential customers as to Plaintiff's employment at or affiliation with Silver Slipper.

52.    Defendant knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship of, employment at, or other relationship with Silver Slipper.

53.    Defendant's use of Plaintiffs' Images caused consumer confusion as to Plaintiffs' sponsorship of, employment at, or other relationship with Silver Slipper, and the goods and services provided by Silver Slipper.

54.    Defendant's unauthorized use of Plaintiffs' Images created a false advertisement prohibited by section 43 of the Lanham Act, and Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

<u>**SECOND CAUSE OF ACTION**</u>
**(Violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A): False Association)**

55.    Defendants' use of Plaintiffs Images created the false impression with the public that Plaintiffs were affiliated, connected, or associated with Silver Slipper, or worked at, sponsored, or approved of Silver Slipper' goods, services or commercial activities.

56.    This was done to promote and attract clientele to Silver Slipper, and thereby generate revenue for the Defendant, for Defendant's commercial benefit.

57.    Even though Defendant was at all times aware that the Plaintiffs were neither affiliated, connected or associated with Silver Slipper, nor worked at, sponsored, or approved of Silver Slipper' goods, services or commercial activities, Defendant nevertheless used Plaintiffs Images to mislead potential customers as to Plaintiffs' employment at or affiliation with Silver Slipper.

58.    Defendant knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship, affiliation, connection, association, or employment at

Silver Slipper.

59.    Defendant's use of Plaintiffs' Images caused consumer confusion as to Plaintiffs' employment at or endorsement of Silver Slipper, and the goods and services provided by Silver Slipper.

60.    Defendant's unauthorized use of Plaintiffs' Images created a false endorsement prohibited by section 43 of the Lanham Act, and Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## THIRD CAUSE OF ACTION
### (Common Law Right of Publicity – Misappropriation of Likeness)

61.    Defendants have appropriated each Plaintiff's likeness for Defendants' commercial purposes without authority or consent from Plaintiffs.

62.    Defendant misappropriated Plaintiffs' likenesses by publishing their Images on Silver Slipper' website or related social media accounts as part of Defendant's advertising campaign.

63.    Silver Slipper's website and social media accounts were designed to advertise and attract business to Silver Slipper and generate revenue for Defendant.

64.    Plaintiffs are informed and believe and hereon allege that the manner in which Defendant posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendant published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

65.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant's republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the

filing of this complaint.

66.    Plaintiffs are informed and believe and hereon allege that Defendant's republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

67.    Upon information and belief, Defendant's use of Plaintiffs' Images did in fact attract clientele and generate business for Silver Slipper.

68.    At no point did any Defendant ever seek or receive permission or consent to use any Plaintiff's Image for any purpose.

69.    Defendant was at all relevant times aware that they had never received any Plaintiffs' permission or consent to use their Images in any medium for any purpose.

70.    At no point did Defendant ever compensate Plaintiffs for its unauthorized use of their Images.

71.    Plaintiffs have been damaged in amounts to be proved at trial.

### FOURTH CAUSE OF ACTION
**(Violation of South Carolina's Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10, *et seq.*)**

72.    Defendant operated Silver Slipper website and social media accounts in order to promote Silver Slipper, to attract clientele thereto, and to thereby generate revenue for Defendant.

73.    As such, Defendant's operation of the website and social media accounts, and their publication of Images thereon, was consumer-oriented in nature and occurred in the trade and commerce with the State of South Carolina.

74.    Defendant published Plaintiffs' Images on Silver Slipper website and social media accounts to create the false impression that Plaintiffs were either strippers working at Silver Slipper, endorsed Silver Slipper, or were otherwise affiliated, associated, or connected with Silver Slipper.

75.    As such, Defendant's intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with Silver Slipper.

76.    Defendant thus engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce in the state of South Carolina.

77.    Defendant advertising practices offends the public policy of South Carolina insofar as it constitutes misappropriation of Plaintiffs' property rights in their own Images, and invasion of Plaintiffs' privacy, for Defendant commercial benefit.

78.    Defendant advertising practices are immoral, unethical, oppressive and unscrupulous insofar as they have sought to confuse the public for their own commercial benefit by implying that Plaintiffs are affiliated, endorse, are associated with and/or are strippers at Silver Slipper.

79.    Defendant advertising practices cause substantial injury to consumers by creating the false impression that Plaintiffs are strippers at, endorse, or are otherwise affiliated with, Silver Slipper.

80.    There are no benefits to Defendant advertising practices as set forth hereon except a benefit to Defendant own commercial interests.

81.    As a result of Defendant's unauthorized and misleading publication of Plaintiffs' Images on their Club's website and social media accounts, each of the Plaintiffs' reputations was injured, and each of the Plaintiffs' ability to market herself as a model was injured.

82.    As a result of Defendant's unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

**FIFTH CAUSE OF ACTION**
**(Defamation)**

83.    As detailed throughout this Complaint, Defendant have published altered Images of Plaintiffs in order to promote their Club to the general public and potential clientele.

84.    Defendant's publication of said Images constitutes a representation that Plaintiffs was either employed by Silver Slipper, that they endorsed Silver Slipper, or that they had some affiliation with Silver Slipper.

85.    None of these representations were true.

86.    In publishing Plaintiffs' altered Images, it was Defendant's intention to create a false impression to the general public that Plaintiffs were strippers working at Silver Slipper or endorsed Silver Slipper.

87.    Defendant was at least negligent in publishing Plaintiffs' Images because they knew, or should have known, that Plaintiffs were not employed by Silver Slipper, had no affiliation with Silver Slipper, had not consented to the use of their Images, and had not been compensated for the use of their Images.

88.    In the alternative, Defendant published the Images of Plaintiffs with actual malice because they knew that Plaintiffs were not employed by Silver Slipper, had no affiliation with Silver Slipper, had not consented to the use of their Images, and had not been compensated for the use of their Images.

89.    Despite Defendant's knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for themselves.

90.    Defendant's publication of Plaintiffs' Images constitutes defamation under South Carolina law because said publication falsely accuses Plaintiff of having acted in a manner – *i.e.*, working as a stripper and/or endorsing a strip club - which would subject each Plaintiff to hatred,

shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

91.    Defendant's publication of Plaintiffs' Images likewise constitutes defamation *per se* under South Carolina law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

92.    This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was a professional stripper and/or promoting as strip club, an inference which Defendant's publication of the Images support.

93.    Defendant's publication of Plaintiffs' Images likewise constitutes defamation *per se* under South Carolina law because, insofar as said publication falsely portrays each of the Plaintiffs as a stripper, it imputes unchastity to her.

94.    Defendant's publication of Plaintiffs' Image' caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

### SIXTH CAUSE OF ACTION
#### (Negligence and *Respondeat Superior*)

95.    Plaintiffs are further informed and believe and hereon allege that Defendant maintain or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the *unauthorized and non-consensual* use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

96.    Further, Defendant should have maintained, or failed to maintain, policies and

procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

97.    Defendant owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

98.    Defendant further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

99.    Defendant breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

100.    Defendant further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and South Carolina law, were not violated.  Defendant breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

101.    Defendant's breach was the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

102.    As a result of Defendant's negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### (Conversion)

103.    Each Plaintiff is, and at all relevant times were, the exclusive owners of all right,

title and interest in their Images, and have property interests thereon.

104.    By the conduct detailed above, Defendant converted Plaintiffs' property rights in their Images for their own use and financial gain Images for its own use and financial gain.

105.    As a result of Defendant's unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

**EIGHTH CAUSE OF ACTION**
**(Unjust Enrichment)**

106.    As set forth in detail above, Defendant published Plaintiffs' Images in order to promote Silver Slipper to the general public and potential clientele.

107.    Defendant's publication was for the purpose of creating a false impression to the general public that Plaintiffs were either strippers working at Silver Slipper or endorsed Silver Slipper.

108.    Defendant's purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

109.    Upon information and belief, Defendant did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

110.    Defendant has been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendant in attracting clientele to their Clubs.

111.    Plaintiffs have not been compensated for Defendant's commercial exploitation of their Images, and thus any financial benefit which Defendant received due to said exploitation is unjust.

112.    As such, Plaintiffs have been damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (Quantum Meruit)

113.    Plaintiffs are each internationally known models who earn their livings appearing in, *inter alia*, commercials, advertisements, and publications on behalf of companies and brands.

114.    Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

115.    Although Defendant has availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at their Club, endorse their Club, or are otherwise affiliated with their Club, Defendant has not compensated Plaintiffs.

116.    Plaintiff is therefore entitled to reasonable compensation for Silver Slipper' unauthorized use of their Images.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

Plaintiffs respectfully request Judgment in their favor and against Defendant as follows:

(a)  For actual damages, in an amount to be determined at trial, relating to Plaintiffs' first through ninth causes of action;

(b)  For an order permanently enjoining Defendant from using Plaintiffs' Images to promote Silver Slipper;

(c)  For punitive damages and treble damages under the Lanham Act, 15 U.S.C. § 1117 and S.C. Code Ann. § 39-5-10, *et seq*.;

(d)  For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C. § 1117 and S.C. Code Ann. § 39-5-10, *et seq*.;

(e)  For such other and further relief as the Court may deem just and proper.

John V. Golaszewski
New York Bar No. 4121091
*Pro Hac Vice Application Pending*
**THE CASAS LAW FIRM, P.C.**
1740 Broadway, 15th Floor
New York, New York 10019
(646) 872-3178
john@casaslawfirm.com

Attorneys for Plaintiffs


August 2, 2022
Mount Pleasant, SC

/s/ Joshua E. Slavin
Joshua E. Slavin
The Law Offices of Joshua E. Slavin
PO Box 762
Mount Pleasant, SC 29465
P: 843-619-7338
F: 888-246-8914
josh@attorneycarolina.com
Fed. Bar No. 12602